ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 OCT 21 PM 12: 36

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

MARK JONES,            )
                       )
    Petitioner,        )
                       )
    v.                 ) CV 111-048
                       ) (Formerly CR 109-203)
UNITED STATES OF AMERICA, )
                       )
    Respondent.        )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner Mark Jones, an inmate currently incarcerated at the Federal Correctional Institution in Estill, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss Petitioner's 28 U.S.C. § 2255 motion. (Doc. no. 4.) Petitioner has failed to respond to Respondent's motion,[1] and the Court therefore considers the motion unopposed. See Loc. R. 7.5. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** (doc. no. 4), that the instant § 2255 motion be **DISMISSED** without an evidentiary hearing, and that this civil action be **CLOSED**.

I.   **BACKGROUND**

In an information filed on December 10, 2009, Petitioner was charged with one count of using a communication facility (telephone) in committing, causing, and facilitating the

---

[1]When no response was filed, the Court specifically informed Petitioner of the consequences of failing to respond and provided him additional time to file any opposition. (Doc. no. 5.)

commission of a conspiracy to distribute and possess with intent to distribute cocaine hydrochloride and 50 grams or more of cocaine base, in violation of 21 U.S.C. § 843(b). United States v. Jones, CR 109-203, doc. no. 1 (S.D. Ga. Dec. 10, 2009) (hereinafter "CR 109-203").[2] Petitioner pleaded guilty to the sole count charged pursuant to a written plea agreement. Id., doc. nos. 8, 10. Petitioner's plea agreement contained a broad appeal and collateral attack waiver provision that stated in relevant part:

> [T]he defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Id., doc. no. 10, pp. 5-6. In addition, by signing the plea agreement, Petitioner attested that he understood:

> [T]he U.S. Probation Office will consider <u>all</u> of defendant's conduct related to the offense to which he is pleading, as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence. The defendant understands that the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by defendant's counsel or the United States Attorney.
> The defendant advises the Court that the defendant understands that if the relevant conduct, guideline sentencing range, or sentence imposed by the Court is more or greater than the defendant expected or, in the case of relevant conduct, is found to be more extensive than the defendant has admitted to, the defendant will still have no absolute right to withdraw his

---

[2]Petitioner was initially indicted in a separate, multi-defendant drug conspiracy case, United States v. Jones, CR 109-073, doc. no. 3 (S.D. Ga. June 4, 2009). The government dismissed the indictment in that case as to Petitioner in exchange for Petitioner pleading guilty to the offense charged in the information in CR 109-203. See id., doc. no. 341; CR 109-203, doc. no. 10, p. 3.

2

guilty plea.

Id. at 7-8.

At the guilty plea hearing held on January 7, 2010, the Honorable J. Randal Hall, United States District Judge, summarized the terms of the plea agreement and explained to Petitioner that he had "agreed . . . [to] waive the right to directly appeal [his] conviction and sentence and to indirectly or collaterally attack that sentencing subject to three conditions." Id., doc. no. 20, p. 21. Judge Hall went over the three situations in which Petitioner would be entitled to appeal, following which he asked Petitioner if he understood the appeal and collateral attack waiver as had just been explained to him. Id. Petitioner responded, "Yes, sir." Id. Judge Hall then asked Petitioner if he still wished to enter into the plea agreement with the waiver, to which Petitioner responded, "Yes, your honor." Id. at 21-22.

Judge Hall also explained at the plea hearing that the maximum penalty for his crime was a term of four years of incarceration, along with a fine of not more than $250,000 and a term of supervised release not to exceed one year. Id. at 17. Additionally, Judge Hall explained the role of the sentencing guidelines, emphasizing that they were only advisory and not binding on him. Id. at 19-20. Furthermore, in response to a question asked by Judge Hall, Petitioner averred that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence. Id. at 20. Following testimony by a government witness as to the factual basis for the plea, the truth of which Petitioner confirmed, Judge Hall accepted Petitioner's guilty plea.

After the plea hearing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI provided for a base offense level of 24 and a two point enhancement based on Petitioner's possession of a firearm, for a total offense level of 26.

3

PSI ¶¶ 18, 19, 27. Petitioner was assigned a criminal history category of II. Id. ¶ 34. Because the low end of the advisory range based on these factors was higher than the maximum term for the conviction, the statutory maximum term of imprisonment – 48 months – was determined to be the advisory sentence under the guidelines. See id. ¶ 54 (citing U.S.S.G. § 5G1.1(a)). Neither party objected to the PSI.

On May 10, 2010, Judge Hall sentenced Petitioner to a 48-month term of imprisonment. Id., doc. no. 14. At the sentencing hearing, Judge Hall again reminded Petitioner that he had "waived the right to attack the sentence in any post-conviction proceeding." Id., doc. no. 19, p. 12. Consistent with his plea agreement, Petitioner did not appeal.

On April 11, 2011, Petitioner filed the instant § 2255 motion, in which he raises the following two grounds for relief: (1) that his trial counsel provided ineffective assistance of counsel by failing to file a notice of appeal despite Petitioner instructing him to do so; and (2) that his trial counsel provided ineffective assistance "by failing to file a motion for the return of Petitioner's bail money as instructed." (Doc. no. 2, pp. 3-5.) Respondent contends that Petitioner's § 2255 motion should be dismissed because his collateral attack is barred by the collateral attack waiver set forth in his plea agreement. (See doc. no. 4.) The Court resolves the matter as follows.

## II. DISCUSSION

### A. No Need For Evidentiary Hearing

In regard to Petitioner's request for an evidentiary hearing, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255

4

proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are barred from review or otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing (doc. no. 2, p. 5) should be denied.

### B. Knowing and Voluntary Nature of Guilty Plea

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea

5

may be involuntary in a constitutional sense:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, the extensive plea colloquy conducted by Judge Hall addresses each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall informed Petitioner in clear terms of the charge against him and the maximum statutory penalty that might be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charge and the maximum penalty that might be imposed. CR 109-203, doc.

6

no. 20, pp. 17-18. Judge Hall also provided a detailed explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. at 24. In addition, Petitioner testified that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence. Id. at 20.

In short, Judge Hall's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. In addition, in the plea agreement, which Judge Hall verified that Petitioner had read and understood, Petitioner explicitly acknowledged his understanding that his sentence would reflect "all of [his] conduct related to the offense." CR 109-203, doc. no. 10, pp. 7-8. The record is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and Petitioner fails to show otherwise with his assertion that he was not made aware of a possible enhancement for use of a firearm. Furthermore, Petitioner has not alleged, much less shown a reasonable probability, that he would not have pleaded guilty if he had known about the possibility of an enhancement in his offense level based on the possession of a firearm. See Moriarty, 429 F.3d at 1020 (rejecting challenge to entry of guilty plea where defendant did not attempt to carry his burden of showing that, but for the alleged error, he would not have entered his guilty plea). Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily.

### C. Petitioner's Claims Are Barred by the Collateral Attack Waiver in His Plea Agreement

It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320,

7

1333 (11th Cir. 2001); Bushert, 997 F.2d at 1345.[3]  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden in the instant case, then Petitioner's claims are barred from review. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 109-203, doc. no. 10, pp. 5-6. Moreover, Judge Hall thoroughly reviewed the terms of the plea agreement during the plea colloquy, with particular emphasis on the significance of the appeal and collateral attack waiver provision. Id., doc. no. 20, p. 21. After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. Id.

The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court [at a guilty plea hearing] carry a

---

[3] Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

8

strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the Court concludes that the collateral attack waiver is valid and that both of Petitioner's enumerated claims are barred from review.

In making this determination, the Court is aware that both of Petitioner's claims assert ineffective assistance of trial counsel. "An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation at sentencing were covered by the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id.

Although the Eleventh Circuit has not addressed the exact issue presented here, the rationale from Williams applies with respect to the instant § 2255 motion. Petitioner's claims that his counsel was ineffective for failing to file an appeal and failing to file a motion for the return of bond money do not call into question the validity of Petitioner's guilty plea or waiver.[4] The claims are therefore barred by the collateral attack waiver. See id.; United States v. Falcon-Sanchez, 416 F. App'x 728, 730 (10th Cir. 2011) (holding that ineffective

---

[4] The claim set forth in Ground Two – that Petitioner's trial counsel was ineffective for failing to file a bail-related motion – would fail as a matter of law to state a claim for habeas corpus relief even if it were not barred, as it does not challenge the validity of Petitioner's conviction or sentence. See 28 U.S.C. § 2255(a); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

9

assistance claim based on counsel's failure to file notice of appeal as instructed by petitioner was barred by collateral attack waiver because the claim "[did] not relate to the validity of the plea or the waiver"); see also United States v. Morgan, 284 F. App'x 79, 83, 87 (4th Cir. 2008) (holding that ineffective assistance claim based on counsel's failure to file appeal was barred by collateral attack waiver); Skaggs v. United States, 104 F. App'x 462, 463 (6th Cir. 2004) (same); but see United States v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007) (holding that ineffective assistance claim based on counsel's failure to file appeal was not barred by appeal and collateral attack waiver).

Additionally, although Respondent does not address the issue, the Court notes that its determination that Petitioner's claim in Ground One is barred by the collateral attack waiver does not run afoul of the decision in United States v. Gomez-Diaz, 433 F.3d 788 (11th Cir. 2005). In that case, the Eleventh Circuit held that a § 2255 petitioner who had entered into a valid appeal waiver did not have to show a meritorious ground for appeal in order to prevail on a claim that his counsel was ineffective for failing to file a notice of appeal when instructed to do so. Id. at 793-94. In contrast to the issue addressed in Gomez-Diaz, the determinative question in the instant case is whether, assuming the truth of Petitioner's allegation that his counsel improperly failed to consult about an appeal, Petitioner is nevertheless barred from raising a claim of ineffective assistance of counsel by a valid waiver of his right to collaterally attack his sentence.

In other words, the Gomez-Diaz decision focused on the waiver of the petitioner's right to file a *direct appeal* – in particular, whether the existence of a *direct appeal* waiver precluded an ineffective assistance of counsel claim absent a showing of a meritorious ground for appeal. See id. The focus of the instant case is the *collateral attack* waiver. That

waiver represents a forfeiture of the right to collaterally attack any error – even a "blatant error" such as counsel's failure to consult about a direct appeal – that does not fall within the previously discussed exception from Williams, *supra*. See United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999) (reasoning that a waiver of the right to pursue an appeal or collateral attack "includes a waiver of the right to appeal [or collaterally attack] blatant error"). Therefore, following the rationale of Williams, the Court concludes that enforcement of the collateral attack waiver in the instant case does not contradict the Eleventh Circuit's holding in Gomez-Diaz.[5]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** (doc. no. 4), that the instant § 2255 motion be **DISMISSED** without an evidentiary hearing, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 21st day of October, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5]Of note, in reaching its decision in Gomez-Diaz, the Eleventh Circuit announced that its opinion was in accord with the Tenth Circuit's treatment of the same issue in United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005). The Tenth Circuit later clarified its decision in Garrett in addressing the issue presented in the instant case, and proceeded to hold that claims of ineffective assistance of counsel premised on counsel's failure to file a notice of appeal are barred by a valid collateral attack waiver. Falcon-Sanchez, 416 F. App'x at 730-31. Thus, the Tenth Circuit's case law concerning these issues further illustrates that the Court's determination in the instant case is in harmony with the Eleventh Circuit's decision in Gomez-Diaz.

11